**E-filed 3/20/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELIYAHOU HARARI, et al., <br><br> Defendants. | Case Number C 05-4691 JF <br><br> ORDER[1] DENYING PLAINTIFF'S MOTION TO REMAND <br><br> [Docket No. 22] |

**I. BACKGROUND**

On August 1, 1983, Eliyahou Harari ("Harari") co-founded a company called Wafer Scale Integration ("WSI"), which sells and designs programmable system devices, including memory systems and nonvolatile memories. Complaint ("Compl.") ¶¶ 6, 9. On February 22, 1984, Harari signed an Employee Agreement Regarding Confidentiality and Inventions ("Inventions Agreement").[2] Compl., Ex. A. Until his resignation, Harari held numerous positions within

---

[1]    This disposition is not designated for publication and may not be cited.

[2]    Pursuant to this agreement, Harari represented that:

   1.    All previous work done by me for [WSI] in any way to the

1  WSI, including employee, chief executive officer, chief technology officer ("CTO"), director,
2  chairman of the board, and consultant.  Compl. ¶¶ 9, 11, 20.
3       During his tenure as CTO, Harari began developing flash memory products.  Comp. ¶¶ 6,

> conception, design, development or support of products for [WSI] is the property of [WSI].
>
> 2.    I will maintain in confidence and will not disclose or use, either during or after the term of my employment without the prior written consent of [WSI], any proprietary or confidential information or know-how belonging to [WSI] ("Proprietary Information"). . . . Upon termination of my employment or at the request of my supervisor before termination, I will deliver to [WSI] all written and tangible material in my possession incorporating the Proprietary Information or otherwise relating to [WSI's] business.
>
> 3.    I will promptly disclose and describe to [WSI] (i) all inventions, improvements, discoveries and technical developments ("Inventions"), whether or not patentable, made or conceived by me, either alone or with others, during the term of my employment, provided that [WSI] shall receive such information in confidence. I hereby assign and agree to assign to [WSI] my entire right, title and interest in and to such Inventions which relate in any way to or are useful in [WSI's] business as presently conducted or as conducted at any future time during my employment, and agree to cooperate with [WSI] . . . both during and after my employment in the procurement and maintenance . . . and/or other protection of [WSI's] rights in such inventions.  I will keep and maintain adequate and current written records of all such Inventions, which shall and remain the property of [WSI].
>
> 4.    (a)  There is no other contract or duty on my part now in existence to assign Inventions.
>
> (b)  I will not disclose or induce [WSI] to use any confidential information or material that I am now or shall become aware of which belongs to anyone other than [WSI].
>
> (c) During my employment by [WSI], I will not engage in any employment, consulting or other activity in any business without [WSI's] express written agreement.

Compl., Ex. A, ¶¶ 1-4.

17. Harari later resigned from his employment, but he continued as a director and consultant pursuant to a Consulting and Directorship Agreement ("Consulting Agreement") signed February 29, 1988. Compl. ¶¶ 20-21; *see* Compl., Ex. C. In the Consulting Agreement, Harari reaffirmed to the obligations that the Inventions Agreement previously imposed. Compl. ¶ 21; *see* Compl., Ex. C.

While serving as a director and consultant to WSI, Harari filed four patent applications. Comp. ¶¶ 24-27.[3] On March 21, 1989, Harari resigned from WSI's board of directors and requested that his resignation be back-dated to March 15, 1989. Compl. ¶ 28. Before the board of directors accepted his resignation, Harari filed two more patent applications.[4] Compl. ¶ 29. In or about June, 1988, Harari founded SanDisk Corp. ("SanDisk"), which began developing flash memory products. Compl. ¶¶ 40, 42. Harari later assigned his six pending patent applications to SanDisk. Compl. ¶ 45. On May 17, 1989, without knowledge of his six patent applications, WSI's board of directors accepted Harari's letter of resignation and agreed to back-date his resignation. Compl. ¶ 31. ST alleges that Harari disclosed only *one* patent application to WSI during his tenure. Compl. ¶ 35.

In July, 2000, STMicroelectronics, Inc. ("ST") merged with WSI, and ST succeeded to all of WSI's rights and property. Compl. ¶ 7. On October 15, 2004, SanDisk filed two complaints

---

[3] On April 26, 1988, Harari filed Patent Application 07/185,699 with the United States Patent and Trademark Office ("PTO"), which resulted in U.S. Patent 4,933,739, entitled "Trench resistor structures for compact semiconductor memory and logic devices." On June 8, 1988, Harari filed Patent Application 07/204,175 with the PTO, which resulted in twenty-two issued patents. On July 8, 1988, Harari filed Patent Application 07/216,873 with the PTO, which resulted in three issued patents. On March 15, 1989, Harari filed Patent Application 07/323,779 with the PTO, which resulted in U.S. Patent 5,070,032, entitled "Method of making dense flash EEPROM semiconductor memory structures." These patents relate to WSI's flash memory products. Compl. ¶¶ 24-27

[4] On April 13, 1989, Harari filed two additional patent applications with the PTO. Patent Application 07/337,566 resulted in the issuance of twenty-one patents and Patent Application 07/337,579 resulted in the issuance of two patents. These patents relate to flash memory devices under development at WSI. Compl. ¶ 30.

alleging that ST infringed U.S. Patent 5,172,338.[5]  Compl. ¶ 46.  On October 14, 2005, ST filed a complaint in the California Superior Court against Harari, SanDisk, and Does 1-20 (collectively "Defendants").  ST asserts: (1) breach of fiduciary duty; (2) breach of written contract; (3) fraud; (4) conversion; (5) inducing breach of contract; (6) unjust enrichment; and (7) unfair competition under California Business & Professions Code § 17200.  The complaint states that "[a]ll of the causes of      action . . . arise under state law.  None of the causes of action . . . are created by federal law, including the patent laws of the United States."  On November 15, 2005, Defendants removed the case to this Court based on their assertion that "the complaint raises a federal question and this is a civil action arising under the laws of the United States."  On November 23, 2005, Defendants filed an answer and counterclaim.

On December 12, 2005, ST filed the instant motion pursuant to 28 U.S.C. § 1447(c).  ST asserts that: (1) the Court lacks subject matter jurisdiction; (2) it should be awarded its costs and actual expenses, including attorney's fees, incurred as a result of the removal; and (3) pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants' counterclaim also should be dismissed for lack of subject matter jurisdiction.  Defendants oppose the motion.

Having considered the briefs, relevant evidence, and the oral arguments at the hearing on February 17, 2006, the Court will deny the motion to remand.

## II.  LEGAL STANDARD

Section 1441(b) permits removal of "[a]ny civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States . . . ."  28 U.S.C. § 1441(b).  Pursuant to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. . . .  The State court

---

[5] *In the Matter of Certain NAND Flash Memory Circuits and Products Containing Same*, Investigation No. 337-TA-526, was filed before the United States International Trade Commission ("the ITC action").  *SanDisk Corp. v. STMicroelectronics, Inc.*, C04-04379 JF, was filed in this Court, Compl. ¶ 46, and was stayed pending the outcome of the ITC action.

may thereupon proceed with such case." 28 U.S.C. § 1447(c).  However, "[t]he district courts shall have original jurisdiction of any civil action *arising under* any Act of Congress relating to patents. . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." 28 U.S.C. § 1338(a) (emphasis added).

Defendants have the burden of establishing that removal was proper under 28 U.S.C. § 1441.  *See, e.g., Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).  "Because of the Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Id.* (citations and internal quotations omitted).  The law of the Federal Circuit controls this case because jurisdiction is based upon 28 U.S.C. § 1338.  *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573 (Fed Cir. 1984), *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).

### III. DISCUSSION

A.  <u>*Christianson* Standard</u>

The Supreme Court in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988), devised a two prong test to determine whether an action "arises under" the patent laws.  First, if the federal patent "creates the cause of action" then the action "arises under" the patent laws.  *Id.*  Plaintiff "is the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  "A court must review and analyze the plaintiff's pleadings, with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws . . . ."  *Air Prod. & Chem., Inc. v. Reichhold Chem., Inc.*, 755 F.2d 1559, 1562 (Fed. Cir. 1985).

Second, federal question jurisdiction extends even to state law causes of action if plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."  *Christianson*, 486 U.S. at 801.  "[M]erely because a claim makes no reference to federal patent law does not necessarily mean the claim does not 'arise under' patent law.  Just as a 'plaintiff

5

may not defeat removal by admitting to plead necessary federal questions in a complaint,' so a plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions." *Id.* at 809 n.3 (citations omitted).

In sum, under *Christianson*'s two prong test, an action "arises under" the patent laws if the complaint pleads that: (1) federal patent law "creates the cause of action"; or (2) the plaintiff's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." 486 U.S. at 801, 809. Here, no patent statute creates any of the causes of action ST asserts. Defendants concede that "ST's complaint does not meet the first prong of the *Christianson* test in that federal patent law does not 'create' the causes of action asserted by ST . . . ." Opposition to Remand at 4 ("Opposition").

Under *Christianson*'s second prong, however, federal jurisdiction exists if ST's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." 486 U.S. at 801, 809. "Claims concerning patent ownership do not create federal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1264 (9th Cir. 1999); *see Jim Arnold Corp. v. Hyrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed Cir. 1997) ("It may seem strange at first blush that the question of whether a patent is valid and infringed ordinarily is one for federal courts, while the question of who owns the patent rights and on what terms typically is a question exclusively for state courts. Yet that long has been the law. It is well settled that if the patentee pleads a cause of action based on rights created by a contract, or on the common law of torts, the case is not one 'arising under' the patent laws.").

Ownership and inventorship issues are completely separate issues. *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). Ownership "is a question of who owns legal title to the subject matter in a patent," while "inventorship is a question of who actually invented the subject matter claimed in a patent." *Id.* A substantial federal question is raised when ownership arises from the patent law issue of inventorship. *MCV, Inc. v. King-Seely Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989).

6

1    ST asserts that the issue of ownership typically is a question exclusively for state courts.
2    Motion to Remand at 12. Defendants argue that "[i]nventorship issues will also have to be
3    resolved in order to determine whether ownership of the patents . . . should be assigned to ST."
4    Opposition at 8. This Court has jurisdiction if ST's well-pleaded complaint necessarily requires
5    resolution of the question of inventorship.

    1.    *Rustevader*

    In *Rustevader Corp. v. Cowatch*, 842 F.Supp. 171, 173 (W.D. Pa. 1993), the plaintiffs asserted in their remand motion that they were seeking a mere determination of ownership rather than a determination of inventorship. Plaintiffs employed Cowatch, Jr. ("Cowatch Jr.") from September 15, 1985, until August 16, 1986. *Id.* at 171. On August 30, 1988, Cowatch Jr. and Cowatch, Sr. ("Cowatch Sr.") were issued a patent as joint inventors ("the Cowatch patent") based upon a patent application filed December 3, 1986. *Id.* Plaintiffs filed a complaint in state court against both Cowatch Jr. and Cowatch Sr. claiming that Cowatch Jr. breached the terms of his employment agreement with plaintiffs. *Id.* In its complaint, plaintiffs sought "an award directing both defendants to assign the Cowatch patent" to plaintiffs. *Id.* at 172. The district court held that:

> Although the plaintiffs contend that this Court lacks jurisdiction based upon their decision to plead claims for breach of contract, they fails to explain how this case arises solely out of a contract when one of the defendants, Cowatch Sr., is not a party to the contract in question. Plaintiffs have not cited any authority for such a proposition and have failed to address, in any way, defendant Cowatch Sr.'s presence in this action. In fact, plaintiffs do not assert anywhere in their complaint that Cowatch Sr. breached any contractual provision. Moreover, plaintiffs' motion to dismiss petition for removal alleges only that Cowatch Jr. breached a contract.

*Id.* at 173. In denying plaintiffs' motion to remand to state court, the district court held that although federal law did not create plaintiffs' claims, the complaint "necessarily depends on the resolution of a substantial federal question," i.e. the determination of inventorship. *Id.* at 174. Thus, because Cowatch Sr. was not in contractual privity with the plaintiffs, the plaintiffs could only obtain assignment of the entire patent if Cowatch Jr. was the sole inventor. *Id.* at 173-74.

    Although Defendants argue otherwise, *Rustevader* is not "directly analogous" to this case

7

and *Rustevader*'s rationale for finding federal question jurisdiction is not "precisely the same" as the basis for federal jurisdiction here. *See* Opposition at 7. In *Rustevader*, both Cowatch Jr. and Cowatch Sr. were named as defendants, which created a contractual privity problem between the plaintiffs and Cowatch Sr. 842 F.Supp. at 171, 173-74. As the court stated, "[i]f Cowatch Jr. was the sole defendant in this case, this Court would, as plaintiffs argue, lack jurisdiction." *Id.* at 173. In this case, while ST does not dispute that persons other than Harari are listed as inventors on several of the patents, ST seeks assignment of only Harari's rights. The contractual privity problem that was determinative in *Rustevader* does not arise in this case.

       2.      <u>California Business & Professions Code § 17200</u>

Defendants contend that substantial issues of patent law will "need to be resolved in order for ST to prevail on its claim that SanDisk violated California Business and Professions Code section 17200, *et seq*." Opposition at 11. As the Supreme Court explained:

> Nor is it necessarily sufficient that a well-pleaded claim alleges a single theory under which resolution of a patent-law question is essential. If "on the face of a well-pleaded complaint there are . . . reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks," then the claim does not "arise under" those laws. Thus, a claim supported by *alternative theories* in the complaint may *not* form the basis for § 1338(a) jurisdiction unless patent law is essential to each of those theories.
>
> Framed in these terms, our resolution of the jurisdictional issue in this case is straightforward. Petitioners' antitrust count can readily be understood to encompass both a monopolization claim under § 2 of the Sherman Act and a group-boycott claim under § 1. The patent-law issue, while arguably necessary to at least one theory under each claim, it is not necessary to the overall success of either claim.

*Christianson*, 486 U.S. at 810 (citations excluded and emphasis added).

Here, ST may rely on state or federal law for purposes of its Section 17200 claim. ST's claim expressly relies on breaches of state law fiduciary and contractual obligations. Thus, to the extent that the instant case does present a patent law issue, resolution of that issue is not necessary to the overall success of the Section 17200 claim.

3.  *AT&T*

Defendants next assert that inventorship issues will have to be resolved "in order to determine whether ownership of the patents that issued from the Disputed Applications should be assigned to ST . . . ." Opposition at 8. Specifically, Defendants rely on *Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321 (Fed. Cir. 1992) [hereinafter *AT&T*], for the proposition that ST must show that "certain of the inventions claimed in the patent were 'conceived' by Harari during his tenure with WSI and 'relate to' WSI's business such that Harari had an obligation to assign them under his contract with WSI." Opposition at 8.

In *AT&T*, AT&T sued Integrated Network Corp. ("INC") and four former employees in state court to obtain title to a patent. 972 F.2d at 1322. AT&T claimed that the four former employees breached their invention assignment agreement ("agreement") when they assigned to INC a patent to an invention that they conceived to while working for AT&T. *Id.* at 1322-23. Pursuant to the agreement, the employees agreed to assign to AT&T all of their rights to inventions conceived of during their employment. *Id.* at 1323. INC removed the case to the district court, and AT&T filed a motion to remand, arguing lack of federal jurisdiction because AT&T's claims were state law contract and tort claims. *Id.* In denying the motion to remand, the district court held that: (1) "to recover, AT & T would necessarily have to prove when the invention was conceived, that is, either while the inventors were employees of AT & T or of INC"; and (2) absent evidence to the contrary, the word "conceived," as used in the agreement, must be given its technical meaning rather than a broad, non-patent meaning. *Id.*

On appeal, the Federal Circuit held that there was not a substantial question of patent law, concluding that the agreement's use of the terms "inventions" and "conceived" did not necessarily mean that the agreement was intended to cover only patentable inventions. *Id.* at 1324. As the court explained, "if what the employees 'conceived' at AT & T had not been patentable, or no patent had been sought, but it nevertheless was treated as a trade secret, their conduct still could have been in breach of the [agreement]." In other words, the [agreement] may have used conception in its generic, broadest sense." *Id.* The court concluded, "[b]ecause 'inventions [and] conceived' has both patent and general law meanings, AT & T may rely on one

9

theory with patent connotations, and on another theory involving no patent question." *Id.*

It is clear from ST's prayer for relief that it seeks "ownership of all patents which issued or claim priority from the applications filed by Harari during and after his tenure as an officer and/or director of WSI, which should have properly been assigned to WSI, be assigned to [ST], as the sole owner if Harari is the sole inventor or as a co-owner if Harari is a co-inventor[.]" Compl. at 18. Defendants' contention that "ST asks that SanDisk assign to ST *all* patents" from the disputed applications misconstrues ST's prayer for relief. Opposition at 5. As ST suggests, "[b]y its Complaint, ST seeks assignment only of the *interest* in those patents which *originally belonged to Harari*, and were wrongfully assigned by him to SanDisk, rather than WSI. ST's complaint makes *no claim* to ownership interests derived from Harari's co-inventors, whether or not those interests have since been assigned to SanDisk." Reply at 3-4 (emphasis added).

This does not end the inquiry, however. To reach the ownership issue the patents first must undergo an inventorship analysis to uncover what exactly Harari contributed to each invention. While it was undisputed in *AT&T* that the former employees had full inventorship in the patent at issue, ST cannot at this time establish what patented inventions or parts thereof Harari "conceived" during his employment with WSI, nor can ST establish what inventions "relate to" WSI's business, unless Harari's inventive contribution to each patent first is identified. The question of whether the interest in a particular patent should have been assigned to WSI arises only after Harari's inventive contribution to each patent has been identified. Accordingly, because determination of inventorship is critical to determination of ownership, Defendants have shown that ST's right to relief "necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims."[6] *See Christianson*, 486 U.S. at 809.

---

[6] As to Defendants' counter-claim, a patent law counter-claim does not create federal patent jurisdiction under Section 1338. *See Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002).

## IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that ST's motion to remand to state court is DENIED.

IT IS SO ORDERED.

DATED: March 20, 2006

_____
JEREMY FOGEL
United States District Court

1  This Order has been served upon the following persons:

2  Russell L. Johnson, Matthew Laurence McCarthy
   Sidley Austin LLP
3  555 California Street, Suite 2000
   San Francisco, CA 94104
4  Email: rljohnson@sidley.com
   Email: MLMcCarthy@sidley.com
5
   James C. Yoon, Michael A. Ladra, Steven S. Baik, Monica Mucchetti
6  Wilson Sonsini Goodrich & Rosati
   650 Page Mill Rd
7  Palo Alto, CA 94304-1050
   Email: jyoon@wsgr.com
8  Email: mladra@wsgr.com
   Email: sbaik@wsgr.com
9  Email: mmucchetti@wsgr.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-01281 JF
ORDER DENYING PLAINTIFF'S MOTION TO REMAND
(JFEX1)