**E-Filed 7/18/06**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STMICROELECTRONICS, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ELIYAHOU HARARI, et al.,<br><br>　　　　　Defendants. | Case Number C 05-4691 JF<br><br>ORDER[1] GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION AND REMANDING ACTION TO ALAMEDA COUNTY SUPERIOR COURT<br><br>[re: doc. no. 39] |

　　　Plaintiff STMicroelectronics, Inc. ("Plaintiff" or "ST") filed the instant action in the Alameda County Superior Court on October 14, 2005, asserting seven state law claims for: (1) breach of fiduciary duty; (2) breach of written contract; (3) fraud; (4) conversion; (5) inducing breach of contract; (6) unjust enrichment; and (7) unfair competition under California Business & Professions Code § 17200 ("§ 17200"). Defendants Eliyahou Harari ("Harari") and SanDisk Corporation ("SanDisk") removed the action to this Court on November 16, 2005 on the ground that adjudication of the state law claims alleged in the complaint requires resolution of a substantial issue of patent law. This Court denied Plaintiff's motion for remand by order dated

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 05-4691 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION ETC.
(JFLC2)

1   March 20, 2006 ("March 20 Order). Plaintiff seeks reconsideration of that order. The Court has
2   considered the briefing of the parties as well as the oral arguments presented at the hearing on
3   June 9, 2006. For the reasons discussed below, the Court will grant Plaintiff's motion for
4   reconsideration and will remand the action to the Alameda County Superior Court.[2]

## I. BACKGROUND

This Court's March 20 Order sets forth the factual and procedural background of this case, which need not be repeated in full. As relevant here, Harari was a co-founder and key employee of Wafer Scale Integration ("WSI"), the predecessor company of Plaintiff ST. Harari signed various agreements with WSI, including the agreement central to the instant dispute, the "Employee Agreement Regarding Confidentiality & Inventions" ("Inventions Agreement"). The relevant paragraph of that agreement reads in its entirety as follows:

> 3.   I will promptly disclose and describe to Company (i) *all inventions*, improvements, discoveries and technical developments ("Inventions"), whether or not patentable, *made or conceived by me, either alone or with others, during the term of my employment*, provided that Company shall receive such information in confidence. *I hereby assign and agree to assign to Company my entire right, title and interest in and to such Inventions which relate in any way to or are useful in Company's business as presently conducted or as conducted at any future time during my employment*, and agree to cooperate with Company and its designee(s) both during and after my employment in the procurement and maintenance, at Company's expense and at its discretion, of patents, copyrights, and/or other protection of Company's rights in such inventions. I will keep and maintain adequate and current written records of all such Inventions, which shall be and remain the property of Company.

Inventions Agreement ¶ 3 (emphasis added).

WSI was in the business of designing and selling programmable system devices, including memory systems. While serving as a director and consultant to WSI, Harari filed four patent applications without disclosure to WSI. After submitting his resignation to WSI but before such resignation was accepted, Harari filed two more patent applications without disclosure to WSI. ST claims that all the inventions described in the applications were conceived during the term of Harari's employment and related to WSI's business, and thus that the

---

[2] Because it concludes that remand is appropriate, the Court will not address Defendants' pending motion for summary judgment and Plaintiff's motion pursuant to Federal Rule of Civil Procedure 56(f), both of which also were argued on June 9, 2006.

2
Case No. C 05-4691 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION ETC.
(JFLC2)

inventions described in the applications fell within Harari's disclosure and assignment obligations. Fifty patents[3] have issued from the six applications, all listing Harari as sole inventor or co-inventor. All fifty patents have been assigned to SanDisk, a company started by Harari that competes directly with ST.

## II. PRIOR ORDER DENYING MOTION FOR REMAND

As set forth in the March 20 Order, Defendants assert that federal jurisdiction exists because adjudication of Plaintiff's state law claims "necessarily depends on resolution of a substantial question of federal patent law." *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988). Specifically, Defendants assert that adjudication of Plaintiff's claims requires an inventorship analysis; it is well-settled that inventorship raises a substantial question of federal law. *See MCV, Inc. v. King-Seely Thermos Co.*, 870 F.2d 1568, 1571 (Fed. Cir. 1989). Plaintiff asserts that its state law claims do not implicate inventorship issues at all, but rather implicate only issues of ownership. Ownership and inventorship issues are completely separate issues. *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). Ownership "is a question of who owns legal title to the subject matter in a patent," while "inventorship is a question of who actually invented the subject matter claimed in a patent." *Id.*

In its March 20 Order, the Court rejected two of Defendants' arguments. First, Defendants claimed that Plaintiff seeks assignment of *all* of the patents that issued from the six disputed applications, even those as to which Harari was a co-inventor rather than the sole inventor. Defendants argued that in order for Plaintiff to prevail on those claims, a court would have to determine that Harari actually was the sole inventor of the patents, such that assignment to Plaintiff of Harari's rights would result in assignment of the patents in their entirety. The Court concluded that Defendants were reading Plaintiff's complaint too broadly, and that fairly

---

[3] Plaintiff states that fifty patents have issued from the subject applications, while Defendants state that forty-eight patents have issued. This discrepancy does not bear on the Court's analysis. For ease of reference, the Court uses the number fifty throughout this order.

read, the complaint actually seeks assignment only of *Harari's interest* in each of the patents.[4]

Second, the Court rejected Defendants' argument that Plaintiff is relying on violation of patent laws to support its state law unfair competition claim under § 17200.  The Court concluded that the § 17200 claim is based upon breaches of state law fiduciary and contractual obligations and thus does not implicate federal patent laws.

What the Court did find persuasive was Defendants' argument that Harari's disclosure and assignment obligations extended only to those *portions* of the patented inventions that Harari personally conceived during his employment with WSI.  Under this construction of the Inventions Agreement, Harari's "inventive contribution" to each patent must be identified before it can be determined whether the patented invention fell within Harari's disclosure and assignment obligations.  Having reconsidered the matter, the Court now believes that this view is erroneous, for the reasons discussed below.

### III. RECONSIDERATION

It is unclear how Defendants, and subsequently the Court, came to inject the phrase "inventive contribution" into the discussion of Harari's contractual disclosure and assignment obligations.  The phrase does not appear in the Inventions Agreement and, indeed, the express language of that agreement directly contradicts the notion that only Harari's "inventive contributions" had to be disclosed and assigned.  As noted above, the Inventions Agreement required *disclosure* of "all inventions ... made or conceived by [Harari], either alone or with others, during the term of [Harari's] employment."  Inventions Agreement ¶ 3.  Accordingly, Harari was obligated to disclose the inventions described in the six disputed patent applications, regardless of whether those inventions were conceived by Harari alone or with others, if the inventions were conceived during the term of Harari's employment.  This disclosure obligation was not limited to Harari's "inventive contribution" to such inventions and likewise was not limited to any particular subject matter; Harari was required to disclose *all* inventions, period, as

---

[4] Plaintiff's counsel confirmed this reading of the complaint at the original hearing on the motion for remand.

long as the temporal limitation in the Inventions Agreement was met (i.e., as long as the invention was conceived during Harari's term of employment).

The Inventions Agreement also required *assignment* of Harari's "entire right, title and interest in and to such Inventions which relate in any way to or are useful in Company's business as presently conducted or as conducted at any future time during [Harari's] employment." *Id.* This language did not require assignment of Harari's "inventive contribution" to such inventions; it required assignment of Harari's *entire right* to any invention, whether conceived alone or with others, that meets the temporal limitation (i.e., that was conceived during Harari's term of employment) and that meets the subject matter limitation (i.e., that was related to or useful to WSI's business).

It is undisputed that Harari is named as sole inventor or co-inventor on the fifty patents at issue. "Patent issuance creates a presumption that the named inventors are the true and only inventors." *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). "Because conception is the touchstone of inventorship, each joint inventor must generally contribute to the conception of the invention." *Id.* (internal quotation marks and citation omitted). "[E]ach co-inventor presumptively owns a pro rata undivided interest in the entire patent, no matter what their respective contributions." *Id.* at 1465. As a matter of law, then, the fact that Harari is named as a sole inventor or co-inventor on the patents at issue establishes that he contributed to the conception of the inventions described therein and that he thereafter acquired a pro rata undivided interest in each patent for which he is named an inventor. Because he was required to disclose to WSI *all* inventions that he conceived *alone or with others* during his term of employment, and to assign *his entire right* in such inventions if they related to WSI's business, there is no need to inquire into Harari's precise inventive contribution. The only relevant questions are whether the inventions described in the subject patents were "made or conceived" during Harari's term of employment and, if so, whether the patented inventions related to WSI's business as conducted during Harari's term of employment.

Defendants argue that these questions – whether the patented inventions meet the temporal and subject matter limitations of the Inventions Agreement – require an inventorship

analysis that implicates federal law.  The *AT&T* decision cited by both sides suggests otherwise.  In that case, AT&T brought a state court action against four of its former employees[5] and Integrated Network Corp. ("INC"), seeking title of a patent.  *Am. Tel. & Tel. Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1322 (Fed. Cir. 1992).  AT&T claimed that the four former employees were contractually obligated to assign the patent to AT&T under an inventions agreement but breached their contractual obligations by assigning the patent to INC instead.  The inventions agreement obligated the four individual defendants to assign to AT&T all of their rights in inventions conceived during their employment.  *Id.* at 1323.  The Federal Circuit held that whether the invention was "conceived" during the individual defendants' employment did not present a substantial question of patent law, noting that "when an invention was conceived may be more a question of common sense than patent law."  *Id.* at 1324.  Accordingly, this Court concludes that whether the patented inventions were "made or conceived" during Harari's term of employment presents a factual question that does not implicate a substantial question of patent law.

The subject matter limitation likewise can be resolved without reference to federal patent law.  The question is whether the subject patented inventions "relate in any way to or are useful" to WSI's business as conducted during Harari's term of employment.  This factual determination will require a comparison of the patented inventions with WSI's business at the relevant time.  It will not require any inventorship analysis.

Because it concludes that adjudication of Plaintiff's state law claims does not require resolution of a substantial question of patent law, the Court will set aside its prior ruling and will grant Plaintiff's motion for remand on the ground of lack of subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c) (providing that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").  Defendants have requested that, in the event the Court is inclined to reconsider the aspect of the March 20 Order discussed

---

[5] The individual defendants actually were employed by Bell Telephone Laboratories, a wholly owned subsidiary that merged into AT&T.

1  above, they be given an opportunity to seek reconsideration of other aspects of the March 20
2  Order.  The Court has reexamined the complaint, all of the briefing to date, and the relevant
3  authorities, and concludes that there is no potential basis for reconsideration of the aspects of the
4  March 20 Order to which Defendants refer.  Accordingly, the Court will not delay in remanding
5  the action to the Alameda County Superior Court.

6  In its motion for remand, Plaintiff requested an award of costs and attorneys' fees
7  pursuant to 28 U.S.C. § 1447(c).  Although after reconsideration it has concluded that removal
8  was improper, the Court will deny Plaintiff's request because – as evidenced by the Court's
9  initial ruling – the removal was not objectively unreasonable.  *See Martin v. Franklin Capital*
10 *Corp.*, — U.S. — , 126 S.Ct. 704, 711 (2005) (holding that "[a]bsent unusual circumstances,
11 courts may award attorney's fees under § 1447(c) only where the removing party lacked an
12 objectively reasonable basis for seeking removal").

### IV. ORDER

(1)  Plaintiff's motion for reconsideration of the Court's March 20 Order is GRANTED;

(2)  the instant action is REMANDED to the Alameda County Superior Court;

(3)  Plaintiff's motion for costs and attorneys' fees is DENIED; and

(3)  the Clerk of the Court SHALL TRANSMIT the file in this action to the Alameda County Superior Court forthwith and SHALL CLOSE this Court's file.

DATED: July 18, 2006

_____
JEREMY FOGEL
United States District Court

1   This Order has been served upon the following persons:

2

3   Edward V. Anderson     evanderson@sidley.com, nye@sidley.com

4   Steven S. Baik , Esq     sbaik@wsgr.com, cphillips@wsgr.com

5   Kevin P. Burke     kburke@sidley.com, sheila.brown@sidley.com

6   Teague I. Donahey     tdonahey@sidley.com, sheila.brown@sidley.com

7   Russell L. Johnson     rljohnson@sidley.com, sheila.brown@sidley.com

8   Michael A. Ladra     mladra@wsgr.com

9   Monica Mucchetti     mmucchetti@wsgr.com, dfernandes@wsgr.com

10  Bart Edward Volkmer , Esq     bvolkmer@wsgr.com

11  James C. Yoon     jyoon@wsgr.com, abaranski@wsgr.com; nfurino@wsgr.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 05-4691 JF
ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION ETC.
(JFLC2)