1

2        **E-Filed 8/27/08**

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12

13   STMICROELECTRONICS, INC.,              Case Number C 05-4691 JF

14                    Plaintiff,             **AMENDED**[1] ORDER[2] GRANTING
                                             PLAINTIFF'S MOTION TO REMAND
15          v.
                                             [re: docket no. 101]
16   ELIYAHOU HARARI, et al.,

17                    Defendants.

18

19

20

21        Plaintiff STMicroelectronics, Inc. ("ST") moves to remand the above entitled action to

22   the Santa Clara Superior Court.  For the reasons set forth below, the motion will be granted.

23

24   ─────────────────

25        [1] The original order, which was filed on August 26, 2008, directed that the action be
     remanded to the Alameda Superior Court.  The Court has received a letter from counsel for
26   STMicroelectronics clarifying that venue has been transferred from the Alameda Superior Court
     to the Santa Clara Superior Court.  Accordingly, the order is amended to direct that the action be
27   remanded to the Santa Clara Superior Court.

28        [2] This disposition is not designated for publication in the official reports.

     Case No. C 05-01281 JF
     ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
     (JFEX3)

# I. BACKGROUND

On August 1, 1983, Eliyahou Harari ("Harari") co-founded a company called Wafer Scale Integration ("WSI"), which designed and sold programmable system devices, including memory systems and nonvolatile memories.  Complaint ("Compl.") at ¶¶ 6, 9.  On February 22, 1984, Harari signed an Employee Agreement Regarding Confidentiality and Inventions ("Inventions Agreement").[3]  *Id.*, Ex. A.  Until his resignation, Harari held numerous positions within WSI,

---

[3] Under this agreement, Harari represented that:

> 1.      All previous work done by me for [WSI] in any way to the conception, design, development or support of products for [WSI] is the property of [WSI].
>
> 2.      I will maintain in confidence and will not disclose or use, either during or after the term of my employment without the prior written consent of [WSI], any proprietary or confidential information or know-how belonging to [WSI] ("Proprietary Information"). . . . Upon termination of my employment or at the request of my supervisor before termination, I will deliver to [WSI] all written and tangible material in my possession incorporating the Proprietary Information or otherwise relating to [WSI's] business.
>
> 3.      I will promptly disclose and describe to [WSI] (I) all inventions, improvements, discoveries and technical developments ("Inventions"), whether or not patentable, made or conceived by me, either alone or with others, during the term of my employment, provided that [WSI] shall receive such information in confidence. I hereby assign and agree to assign to [WSI] my entire right, title and interest in and to such Inventions which relate in any way to or are useful in [WSI's] business as presently conducted or as conducted at any future time during my employment, and agree to cooperate with [WSI] . . . both during and after my employment in the procurement and maintenance . . . and/or other protection of [WSI's] rights in such inventions.  I will keep and maintain adequate and current written records of all such Inventions, which shall and remain the property of [WSI].
>
> 4.      (a)  There is no other contract or duty on my part now in existence to assign Inventions.
>
>         (b)  I will not disclose or induce [WSI] to use any

2

1   including employee, chief executive officer, chief technology officer ("CTO"), director, chairman

2   of the board, and consultant. *Id.* at ¶¶ 9, 11, 20.

3       During his tenure as CTO, Harari began developing flash memory products. *Id.* at ¶¶ 6,

4   17. Harari later resigned from his employment, but he continued as a director and a consultant

5   under a Consulting and Directorship Agreement ("Consulting Agreement") signed February 29,

6   1988. *Id.* at ¶¶ 20-21; *see id.*, Ex. C. In the Consulting Agreement, Harari reaffirmed the

7   obligations that the Inventions Agreement previously imposed. *Id.* at ¶ 21; *see id.*, Ex. C.

8       While serving as a director and consultant to WSI, Harari filed four patent applications.

9   *Id.* at ¶¶ 24-27.[4]  On March 21, 1989, Harari resigned from WSI's board of directors and

10  requested that his resignation be back-dated to March 15, 1989. *Id.* at ¶ 28. Before the board of

11  directors accepted his resignation, Harari filed two more patent applications.[5]  *Id.* at ¶ 29.  In or

12  about June, 1988, Harari founded SanDisk Corp. ("SanDisk"), which began developing flash

13  memory products. *Id.* at ¶¶ 40, 42. Harari later assigned his six pending patent applications to

14

15          confidential information or material that I am now or shall become
            aware of which belongs to anyone other than [WSI].
16

17          (c) During my employment by [WSI], I will not engage in
            any employment, consulting or other activity in any business
18          without [WSI]'s express written agreement.

19  Compl., Ex. A, ¶¶ 1-4.

20      [4]  On April 26, 1988, Harari filed Patent Application 07/185,699 with the United States
21  Patent and Trademark Office ("PTO"), which resulted in U.S. Patent 4,933,739, entitled "Trench
    resistor structures for compact semiconductor memory and logic devices." On June 8, 1988,
22  Harari filed Patent Application 07/204,175 with the PTO, which resulted in twenty-two issued
    patents. On July 8, 1988, Harari filed Patent Application 07/216,873 with the PTO, which
23  resulted in three issued patents. On March 15, 1989, Harari filed Patent Application 07/323,779
    with the PTO, which resulted in U.S. Patent 5,070,032, entitled "Method of making dense flash
24  EEPROM semiconductor memory structures." These patents relate to WSI's flash memory
25  products. *Id.* at ¶¶ 24-27

26      [5]  On April 13, 1989, Harari filed two additional patent applications with the PTO. Patent
27  Application 07/337,566 resulted in the issuance of twenty-one patents and Patent Application
    07/337,579 resulted in the issuance of two patents. These patents relate to flash memory devices
28  under development at WSI. *Id.* at ¶ 30.

1  SanDisk.  *Id.* at ¶ 45.  On May 17, 1989, WSI's board of directors accepted Harari's letter of

2  resignation and agreed to back-date the resignation.  *Id.* at ¶ 31.  The board did not know about

3  Harari's six patent applications.  *Id.*  ST alleges that Harari disclosed only *one* patent application

4  to WSI during his tenure.  *Id.* at ¶ 35.

5        In July, 2000, ST merged with WSI, and ST succeeded to all of WSI's rights and

6  property.  *Id.* at ¶ 7.  On October 15, 2004, SandDisk filed two complaints alleging that ST was

7  infringing U.S. Patent No. 5,172,338.[6]  *Id.* at ¶ 46.  On October 14, 2005, ST filed a complaint in

8  the Alameda Superior Court against Harari, SandDisk, and Does 1-20 (collectively "Defendants").

9  The complaint asserted claims for (1) breach of fiduciary duty; (2) breach of written contract; (3)

10 fraud; (4) conversion; (5) inducing breach of contract; (6) unjust enrichment; and (7) unfair

11 competition under California Business & Professions Code § 17200.  The complaint alleged that

12 "[a]ll of the causes of action . . . arise under state law.  None of the causes of action . . . are

13 created by federal law, including the patent laws of the United States."  *Id.* at ¶ 54.

14       Defendants first removed the action to this Court in 2005.  Initially, the Court denied

15 ST's motion to remand because Defendants' opposition papers indicated that the Inventions

16 Agreement only covered patents to which Harari had made an "inventive contribution."  To

17 determine Harari's inventive contribution, it would have been necessary for the Court to decide

18 whether Harari invented each patented item, which in turn would have raised a substantial patent-

19 law question.  The Court later reconsidered its ruling and granted the motion to remand when it

20 was brought to its attention that the Inventions Agreement required Harari to assign all patents

21 for which he applied by himself or with others, a fact that removed all federal issues from the

22 case.

23       In April 2008, while this case was pending in the state court, ST asserted in an answer to

24 a written interrogatory that the Inventions Agreement contained a clause that automatically

25

26 ───────────────

[6] *In the Matter of Certain NAND Flash Memory Circuits and Products Containing Same*,
27 Investigation No. 337-TA-526, was filed before the United States International Trade
   Commission ("the ITC action").  *SandDisk Corp. v. STMicroelectronics, Inc.*, C04-04379 JF, was
28 filed in this Court, Compl. ¶ 46, and was stayed pending the outcome of the ITC action.

Case No. C 05-01281 JF
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
(JFEX3)

1   assigned Harari's patents to WSI, rather than providing for a future assignment of all patents to

2   WSI. Relying on a recent Federal Circuit decision, *DDB Techs. L.L.P. v. MLB Advanced Media,*

3   *L.P.*, 517 F.3d 1284 (Fed. Cir. 2008), which held that whether a contract provides for automatic

4   assignment is a federal question because it is related to standing to sue for patents, Defendants

5   again removed the action to this Court. Defendants claim that in light of *DDB Techs.*, ST has

6   introduced a substantial federal question through its answer to the interrogatory.

7        ST filed the instant motion in response to this second removal. ST claims that the

8   Defendants' removal is procedurally flawed because it is untimely and barred as *res judicata*, and

9   also that removal is improper on the merits. According to ST, removal is untimely because

10   Defendants received documents that made them aware that the Inventions Agreement contained

11   an automatic-assignment clause more than thirty days before they filed their notice of removal.

12   ST asserts that removal is improper on the merits because the Federal Circuit case of *Beghin-Say*

13   *Int'l Inc. v. Rasmussen*, 733 F.2d 1568 (Fed. Cir. 1984), and not *DDB Techs.*, is controlling.

14   *Beghin-Say* holds that disputes over patent assignment agreements are governed by state contract

15   law, and that accordingly federal courts have no jurisdiction over them. *Beghin-Say*, 733 F.2d at

16   1571. ST also argues that the putative federal question asserted by Defendants relates to the

17   applicable statute of limitations and not the substance of ST's claims.

18                    **II. LEGAL STANDARD**

19        Section 1441(b) permits removal of "[a]ny civil action of which the district courts have

20   original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of

21   the United States . . . ." 28 U.S.C. § 1441(b). Under 28 U.S.C. § 1447(c), "[i]f at any time

22   before final judgment it appears that the district court lacks subject matter jurisdiction, the case

23   shall be remanded. An order remanding the case may require payment of just costs and any

24   actual expenses, including attorney fees, incurred as a result of the removal. . . . The State court

25   may thereupon proceed with such case." 28 U.S.C. § 1447(c). However, "[t]he district courts

26   shall have original jurisdiction of any civil action *arising under* any Act of Congress relating to

27   patents. . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases."

28   28 U.S.C. § 1338(a) (emphasis added).

1   Defendants have the burden of establishing that removal was proper under 28 U.S.C.

2   § 1441.  *See, e.g., Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).  "Because of the

3   Congressional purpose to restrict the jurisdiction of the federal courts on removal, the statute is

4   strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of

5   removal in the first instance."  *Id.* (citations and internal quotations omitted).  The law of the

6   Federal Circuit controls this case because jurisdiction is based upon 28 U.S.C. § 1338.  *Panduit*

7   *Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573 (Fed Cir. 1984), *overruled on other*

8   *grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424 (1985).

9                                    **III.  DISCUSSION**

10      Under 28 U.S.C. § 1446(b), a defendant must remove an action within thirty days of

11  receiving a paper indicating that the action is removable.  ST asserts that the removal at issue

12  here is untimely for two reasons.  First, it claims that the only paper relevant for removal under

13  the well-pleaded-complaint rule is the complaint itself.  Defendants obviously have had ST's

14  complaint for well over thirty days.  Second, it argues that more than thirty days before removal

15  Defendants received a paper in a related action before the International Trade Commission

16  ("ITC") indicating that ST was asserting the existence of an automatic-assignment clause.

17      The Court agrees with Defendants that the complaint is not the only relevant paper.

18  When subsequent events in litigation reveal that the plaintiff's claim depends on a substantial

19  federal issue, the documents revealing those facts also may introduce a federal issue into the

20  claim.  *See Eyak Native Village*, 25 F.3d 773, 779 (9th Cir. 1994); *cf. S.W.S. Erectors, Inc. v.*

21  *Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996) (documents introduced after the complaint indicating

22  amount-in-controversy allow for removal); *Johnson v. America Online, Inc.*, 280 F. Supp. 2d

23  1018 (N.D. Cal. 2003) (documents other than the complaint established amount-in-controversy

24  for removal).  As noted above, the Federal Circuit did not decide *DDB Techs.*, which provides

25  the legal basis for the present removal, until February 2008.

26      However, the Court agrees with ST that Defendants were on notice that this case might be

27  removable by virtue of ST's brief in the related ITC case, which Defendants received more than

28  thirty days before they sought the present removal.  Although Defendants received the ITC brief

6

1   on March 3, 2008, they did not seek removal until May 6, 2008.  The ITC brief asserts plainly

2   that the contractual provision at issue provides for automatic assignment of the Harari patents.

3   *See* Johnson Decl., Ex. O, at 3-4.  As ST points out, SanDisk is a party to the ITC action, and it is

4   represented in that action by the same counsel that represents Defendants in this case.

5          The thirty-day removal clock begins ticking once the party is put on notice that the suit is

6   removable.  The statute's text and the case law do not require that the paper be filed in the same

7   case or even come from the same party.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247,

8   1251 (9th Cir. 2006) (once defendants receive a paper that gives enough information to remove,

9   defendants are charged with notice of removability); *cf. Babasa v. LensCrafters, Inc.*, 498 F.3d

10  972 (9th Cir. 2007) (letter prepared for mediation in the case sufficient to put its recipient on

11  notice about removability).  Although the paper that Defendants received was connected with a

12  different suit in which ST is not a party, that suit is directly related to this one and the arguments

13  in the paper directly concerned the same contractual provision.  Once Defendants received it,

14  they had sufficient information to remove the instant case, because they were aware that the

15  Inventions Agreement might include an automatic-assignment clause and thus that a federal issue

16  might be part of the claim.

17         Even if removal were timely, it is unclear that ST's claims depend on a substantial issue

18  of federal law.  Defendants claim that ST introduced a federal question by its interrogatory

19  response, which asserted for the first time in this case that the Inventions Agreement contained

20  an automatic-assignment clause.  *See* Johnson Decl. Ex. I, at 25.  However, the fact that a

21  plaintiff's *theory* of the case depends on federal law is insufficient to warrant removal; the *claim*

22  itself must depend on federal law, such that the plaintiff cannot make out the elements of the

23  claim without determination of the federal issue.  *Christianson v. Colt Indus. Operating Corp.*,

24  486 U.S. 800, 811 (1988).  A defense or an anticipation of a defense cannot create federal

25  jurisdiction, even if the defense is the only issue in dispute in the case.  *Id.*

26         Defendants argue that ST's claims depend affirmatively on the non-existence of an

27  automatic-assignment clause.  According to Defendants, Harari never could have assigned the

28  patents to SanDisk if there were an automatic-assignment clause, because Harari would not have

7

1  owned the patents.  Under this view, any assignment to SanDisk would be invalid, and

2  consequently ST's conversion, breach of contract, and unjust enrichment claims all would fail.

3        This admittedly is a close question, but the Court concludes that Defendants have not

4  shown beyond doubt that ST's claims depend on federal law.  Whether there was an automatic-

5  assignment clause or an agreement to assign the patents in the future, the essence of ST's claims

6  is that Harari wrongfully assigned the patents at issue to SanDisk.  In either case, it is possible for

7  ST to recover on its claims without Defendants interposing a defense based on federal law.

8  Because all doubts must be resolved in favor of remanding to state court, *see, e.g., Duncan*, 76

9  F.3d at 1485; *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992), and because Defendants'

10  removal was procedurally flawed, the case will be remanded.

11        ST requests that the Court award it attorneys' fees and costs.  It argues that Defendants

12  removed for a second time on the same basis that this Court rejected two years ago.  In

13  appropriate circumstances, where the defendant "lacked an objectively reasonable basis for

14  seeking removal," the Court may award fees and costs. *Martin v. Franklin Capital Corp.*, 546

15  U.S. 132, 141 (2005).  As discussed above, the Court finds this to be a close case, and

16  Defendants' basis for seeking removal was not objectively unreasonable.  Accordingly, the

17  request for fees and costs will be denied.

18                                    **IV.  ORDER**

19        Good cause therefore appearing, IT IS HEREBY ORDERED that ST's motion to remand

20  is GRANTED.  The Clerk shall transmit the file to the Santa Clara Superior Court.

21

22  DATED:  August 27, 2008

23

24                                    _____

25                                    JEREMY FOGEL
                                      United States District Court

26

27

28

8

1

This Order has been served upon the following persons:

2

3    Russell L. Johnson, Matthew Laurence McCarthy
     Sidley Austin LLP
     555 California Street, Suite 2000
4    San Francisco, CA 94104
     Email: rljohnson@sidley.com
5    Email: MLMcCarthy@sidley.com

6    James C. Yoon, Michael A. Ladra, Steven S. Baik, Monica Mucchetti
     Wilson Sonsini Goodrich & Rosati
7    650 Page Mill Rd
     Palo Alto, CA 94304-1050
8    Email: jyoon@wsgr.com
     Email: mladra@wsgr.com
9    Email: sbaik@wsgr.com
     Email: mmucchetti@wsgr.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. C 05-01281 JF
ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
(JFEX3)